ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS v. HALL & BROWN WOODWORKING MACHINE COMPANY.

Decided March 21, 1900.

1. **Evidence—Sufficiency.**

See evidence held sufficient to support conclusion that goods transported by a carrier to their destination were removed therefrom within twenty-four hours.

2. **Carrier—Warehouseman—Misdelivery of Goods.**

Where a carrier permitted goods consigned to shipper's order (their draft on purchaser being attached to bill of lading sent to a bank) to be taken away by such purchaser, after arrival at destination, without paying the draft or producing the bill of lading, it was equally liable for their value whether its possession was that of a warehouseman or of a carrier and it was immaterial whether or not the trial court was correct in treating its liability after arrival as that of a common carrier.

**3. Same—Suit by Shipper Against Purchaser.**

A suit by the consignor at the instance and for the benefit of the carrier and judgment therein for value of the goods against one wrongfully converting them after their arrival at destination, did not affect the shipper's right of recovery against the carrier for misdelivery.

Appeal from McLennan, Fifty-fourth District. Tried below before Hon. Sam R. Scott.

*S. H. West* and *Clark & Bolinger,* for appellant.

*L. C. Alexander,* for appellee.

COLLARD, Associate Justice.—Appellee, Hall. & Brown Woodworking Machine Company, plaintiff below, sued the appellant, St. Louis Southwestern Railway Company of Texas, for conversion of certain machinery and property of the value of $1476.95, shipped by appellee over defendant's railroad and its connecting lines, operating as partners, paying the freight on the shipment to Bettie, Texas, to plaintiff's order, on a bill of lading, and that on arrival of the goods at the station Bettie, defendant converted the property to its own use, to plaintiff's damage $3000. Prayer for judgment for the property, and in the alternative for its value. The bill of lading, attached as an exhibit to the petition, contains description of the goods shipped and certain agreements to be noticed hereafter.

Defendant answered by general demurrer, general denial, and a special answer admitting that plaintiff shipped the goods, as stated in petition, to Bettie station, but that it was a way station on its railroad, at which defendant had no depot or agent, which facts were known to plaintiff when the goods were shipped; that defendant promptly delivered the goods at the station Bettie and left them there in a sealed car, which was all the delivery it could make; and so having performed its contract, it was not liable.

It further answered that plaintiff is estopped from claim for damages for the reason that it notified defendant to desist from seeking to regain possession of the goods from one J. W. Stewart, who took possession of them at Bettie station, stating that it, the plaintiff, would be fully able to protect itself, and by this prevented defendant from recovering the goods. Wherefore, plaintiff can not now claim the damages sued for.

And further, that afterwards, on June 30, 1892, plaintiff, asserting title, sued J. W. Stewart, who had possession of the goods, and sequestered them, and the same being replevied by Stewart, plaintiff afterwards obtained judgment against him and the sureties on his replevy bond for the full value of the same, which still is a subsisting judgment in favor of plaintiff; and, having thus elected to recover damages against Stewart, waived any right against defendant for the conversion of the goods.

Defendant set up certain credits for amounts paid by Stewart to plaintiff, amounting to $130.

The case was tried without a jury, and the court rendered judgment for plaintiff for $1582.60, to bear interest from date of judgment. Defendant has appealed.

We find the facts proved on the trial as follows: The trial judge, at request of defendant, filed conclusions of facts found by him, and we find the same facts as proven on the trial, as follows:

"1. I find that on the 29th day of September, 1891, plaintiff, Hall & Brown Woodworking Machine Company, shipped a car load of machinery to be delivered to itself at Bettie, Texas. That the bill of lading was issued by the St. Louis Southwestern Railway Company, which was a connecting line and partner of defendant herein.

"2. I find that said goods were intended for one J. W. Stewart, who lived at Bettie, Texas, but were shipped by plaintiff to its order at Bettie, Texas, and that draft on J. W. Stewart for $452, with five notes for about the sum of $256.24 each, were attached to said bill of lading, and said bill of lading, notes, and draft were sent to the Camp County Bank, Pittsburg, Texas, to be delivered to J. W. Stewart upon his paying the draft and executing the notes.

"3. I find that Stewart never paid the draft or executed the notes, and that the bill of lading was never surrendered to him by the Camp County Bank, but said bill of lading, with notes and draft, were returned to plaintiff, as shown by the evidence herein.

"4. I find that said goods were received by defendant and carried to Bettie, Texas, which was a station without any agent or depot. That the carload of goods remained there about twenty-four hours, and were removed by defendant to Smith's switch, about two miles north of Bettie.

"5. I find that shortly after the goods arrived at Smith's switch the said J. W. Stewart went there after them, having failed to find them at Bettie. That he was told by a telegraph operator who was there in a box car, to take them, and that the said Stewart did take their goods, without paying anything for them, and carried them to his mill some five miles distant, where he set them up as a part of his machinery.

"6. I find that said goods were of the reasonable value of $1325 and that plaintiff had paid freight thereon of the amount of $152, and I find that no part of said amounts has been paid to plaintiff except the sum of $135 paid thereon by Stewart about the year 1892.

"7. I further find, that, at the request of defendant, the plaintiff brought suit against Stewart and sequestered the property; that the same was replevied by Stewart and afterwards destroyed by fire.

"8. I find that the bill of lading contained among other things the following clause: 'Notice.—This contract is accomplished and all liability thereunder as a common carrier terminates on the arrival of the goods or property at the station or depot of delivery; within twenty-four hours after their said arrival, they may be removed and stored at the owner's expense and risk.'

" 'Notice.—In accepting this contract, the shipper or the agent of the

owner of the property carried expressly accepts and agrees to all its stipulations and exceptions.'

"9. I find that the litigation against Stewart was carried on with the express understanding that defendant was not to be released thereby unless plaintiff collected payment for its goods.

"10. I find that when the goods arrived at Bettie, Texas, no notice was given to the consignee of their arrival, nor was any attempt made to give such notice."

The goods were shipped by plaintiff to their own order with bill of lading attached at Stewart's request, prepaying the freight charges, sending the notes of Stewart to be given for the machinery to bank at Pittsburg, to be signed by him. The goods were delivered to and taken by Stewart without the consent of plaintiff, at the switch station about two miles north of Bettie.

Plaintiff prepaid the freight charges to Bettie, $152, and $135 of the amount was returned to it. The total value of the goods and freight expenses was $1476 and some cents, of which $135 was returned, as above stated, but nothing more has been paid to plaintiff by Stewart or defendant.

Plaintiff sued Stewart for the goods, at request of defendant, to collect, if possible, the value of the goods from Stewart, but plaintiff in no way released the railway company from its liability for the goods, and did not agree to do so. Plaintiff sued Stewart on account of the goods to save the railway company from loss, but after the goods were replevied by Stewart in the sequestration suit by plaintiff against him, they were destroyed by fire.

*Opinion.*—1. We notice first appellant's fifth assignment of error, which assails the lower court's conclusion of fact in finding that the goods only remained at Bettie twenty-four hours, and were afterwards removed to Smith's switch, two miles north of Bettie. Appellant claims in the assignment that there was no evidence to support either of these findings.

Plaintiff read depositions of J. W. Stewart taken by defendant, and therein the witness says: "When I learned said machinery was at Bettie, I took my wagons and went after it. My wagons were hauling lumber from my mills to Bettie, and my teamsters informed me that my machinery was there. I then went to Bettie for it, but found the machinery at Smith's switch, about two miles north of Bettie." He found the machinery in a box car, loaded it on his wagons, and carried it off. He also testified that the box car in which he found the machinery remained at Bettie about a day and night, as he was informed by one of his mill hands. The circumstances in proof warranted the conclusion that defendant moved the box car containing the machinery from Bettie to the switch. There is no merit in the assignment of error.

2. It is immaterial, under the facts, whether defendant's liability depends upon its duties as a common carrier or a warehouseman. In

either case it would be liable for surrendering the goods to a person other than the consignee or some person authorized by it to receive and take the goods. So the objection that the court below predicated liability upon the duties of a common carrier, is unimportant and can not affect the judgment. If it be held that the stipulation in the contract of shipment terminated the liability of defendant as a common carrier within twenty-four hours after arrival of the goods at Bettie, without notice of such arrival to plaintiff, at a point on the road where there was no office or station agent, still it would be liable for the goods as for conversion under the facts stated. We do not intend to say that defendant, under the circumstances, was not liable as a common carrier, but that it is of no consequence whether it was liable as a common carrier or a warehouseman, as in either case it was liable, and it is unnecessary to decide as to the character of liability.

Defendant could not discharge itself of liability by delivering the car loaded with the goods at its station on its railway track.

The suit of plaintiff, and the judgment obtained against Stewart brought at the instance and for the benefit of defendant, did not operate as a discharge of defendant from his liability. The judgment was not satisfied, and defendant is yet liable to plaintiff for conversion of its goods. Plaintiff admits a credit which it allows of $135, payment of part of freight charges, but nothing more has been paid by Stewart or defendant.

Under every view of the facts of the case, plaintiff had a good cause of action against the defendant, and under no view of the facts, do we find any defense that ought to be sustained. We therefore affirm the judgment, and it is so ordered.

*Affirmed.*

Writ of error refused.